UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DEMETRIUS G. HILL,

    Plaintiff,

v.

JAMES P. BEST,

    Defendant.

Case No. 10-cv-26-JPG-PMF

**MEMORANDUM AND ORDER**

    This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 117) of Magistrate Judge Philip M. Frazier recommending that the Court grant defendant James P. Best's motion for partial summary judgment (Doc. 111). Plaintiff Demetrius G. Hill has objected to the Report (Doc. 118), and Best has responded to that objection (Doc. 123).

    In this case, Hill alleges in Count 1 that Best violated his constitutional rights by opening and reading a piece of "privileged legal mail" outside his presence on or around June 14, 2009. In Count 1, he also alleges Best retaliated against him based on the content of that mail (he was going to provide information to an attorney about another inmate's case) in violation of the First Amendment, but those allegations are considered in Count 4, Hill's retaliation claim. Hill claims Best interfered with his right to send and receive mail, to be free from interference with the attorney-client relationship, and to be free from cruel and unusual punishment.

    In Count 4, Hill alleges that Best retaliated against him from June 2009 to October 2009 for exercising his right to assist in an investigation of another inmate's case and to file grievances. He alleges Best retaliated by threatening Hill's safety, giving him an undesirable cellmate, assaulting him, denying him haircuts and showers, and bribing other inmates to harm Hill. The

Court has dismissed Hill's retaliation claims based on everything except the alleged assault and denial of showers.

I.   **Report and Recommendation Review Standard**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3).   The Court must review *de novo* the portions of the report to which objections are made. *Id.*   "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

II.   **Report**

Magistrate Judge Frazier addressed the question of whether Best was entitled to summary judgment on part of Count 1 (interference with legal mail) and part of Count 4 (retaliation).

With respect to Count 1, Magistrate Judge Frazier concluded that the July 14, 2009, letter marked "Privileged Legal Communication" that was opened and read outside of Hill's presence – in violation of prison rules regarding legal mail – was not communication covered by the attorney-client privilege because it had nothing to do with providing Hill legal advice.   He further concluded that Best's opening of the July 14, 2009, letter marked "Privileged Legal Communication" outside Hill's presence did not result in any harm such as an adverse impact on Hill's ability to litigate and did not interfere with the attorney-client relationship.

With respect to Count 4, Magistrate Judge Frazier found no evidence in the record indicating a temporal connection between Hill's exercise of his First Amendment rights (filing grievances and assisting in the investigation of another inmate's case) and the deprivation of

showers for a week beginning August 12, 2009, such that an inference of causation was reasonable.

## III.   Objections and Analysis

Hill objects to every part of the Report.  Consequently, the Court will review the entire matter *de novo*.  Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial.  *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).  Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways.  It may present evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B).  *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169.  Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion.  *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

### A. Count 1: Legal Mail Violation

Issues regarding prisoner mail are viewed through various lenses that depend on the nature of the mail and the nature of the constitutional right in issue.

The nature of the mail is generally divided into two categories: legal and non-legal. Legal mail includes mail between a prisoner and an attorney representing him or from whom he is seeking representation. *See Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005). Legal mail also includes other mail relating to the prisoner's legal proceedings such as, for example, communications between prisoners and courts or agencies. *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 804 (7th Cir. 2010). Other mail is categorized as non-legal mail. Not all mail is entitled to the same constitutional protections. *Id.* at 804.

With respect to legal mail between a prisoner and an attorney that represents him (or that he is asking to represent him) in a civil case about that representation, the constitutional right in issue is usually the Fourteenth Amendment right of access to the courts. *Id.* at 802. Interference with

such mail, or violating the confidentiality of the communication, has the potential to undermine the prisoner's right to retain his counsel of choice in his civil court proceeding and have a fair hearing. *Id.* at 803.   With respect to legal mail between a prisoner and an attorney in a criminal case, the Sixth Amendment right to effective assistance of counsel is implicated by reading confidential communications about the criminal case.  *Id.*   With this kind of "attorney-client mail" – essentially defined by the contours of communications covered by the attorney-client privilege – courts have settled on an accommodation of the prisoner's rights and the prison's interest in maintaining institutional security:

> [P]rison employees . . . should be permitted to open incoming mail from a prisoner's lawyer to verify that it is indeed a communication, related to current or prospective representation, from a lawyer who is authorized to practice law in the relevant jurisdiction and is in fact the prisoner's lawyer; on the other hand the prisoner should be allowed to be present when the letter is opened.

*Id.* at 804; *see also Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) (outlining similar procedure). Where the procedures do not satisfy the applicable constitutional standards, the Court should conduct a harmless error analysis to determine whether the interference or surveillance hindered the prisoner's effort to pursue a legal claim or defense, for example, by chilling his communication with his attorney or otherwise "block[ing] the prisoner's access to meaningful justice." *Guajardo-Palma*, 622 F.3d at 805-06; *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

With respect to non-legal mail, the right most commonly at issue is the First Amendment right to send and receive mail generally.  *See Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). "Prison regulations or practices affecting a prisoner's receipt of nonlegal mail . . . must be reasonably related to legitimate penological interests" such as prison institutional security.   *Id.*

5

(internal quotations omitted).

In Hill's case, the June 14, 2009, letter that was opened outside Hill's presence and read by Best was not the kind of mail entitled to the protections afforded to "attorney-client mail." While it was technically "legal mail" in that it came from an attorney's office and it related to a potential legal matter, the attorney sending it was not Hill's attorney and the case mentioned in the letter was not Hill's. Additionally, it is clear from the substance of the letter that it was not in response or in relation to an attempt by Hill to retain the attorney's office for a legal matter. The communication was clearly not about or pursuant to an attorney-client relationship deserving of the protections described in *Guajardo-Palma* and *Wolff*. That Hill may have had in the back of his mind that he would like to hire a lawyer from this office for a separate legal matter, or that he may have tried to hire one in the past, does not convert the June 14, 2009, letter into "attorney-client mail." Nor does the "Privileged Legal Communication" marking from the attorney's office transform the letter into something it is not.

Furthermore, even if the letter were "attorney-client mail" that should have been opened in Hill's presence and not read by Best, there is no evidence that such conduct chilled Hill's communication with an attorney representing him or otherwise blocked his meaningful access to the courts in any actual case. Thus, any error was harmless.

Finally, that fact that opening mail marked as legal mail outside of Hill's presence may have violated a prison rule or regulation does not, by itself, amount to a constitutional violation. *See, e.g., Guajardo-Palma*, 622 F.3d at 806.

For these reasons, Best is entitled to summary judgment on Count 1 to the extent it relies on the Fourteenth Amendment right of access to the courts and the Sixth Amendment right to

effective assistance of counsel in a criminal case. The remainder of Count 1, consisting of Hill's First Amendment retaliation claims, are addressed in Count 4. Therefore, Count 1 will be dismissed in its entirety.[1]

   B.   Count 4

In order to withstand a motion for summary judgment on a First Amendment retaliation claim, a plaintiff must show "(1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted). Then the burden shifts to the defendant to rebut the causal inference created by the plaintiff's showing and to prove that it would have taken the same action regardless of the plaintiff's protected activity. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir.), *cert. denied,* 133 S. Ct. 489 (2012); *Peele v. Burch*, 722 F.3d 956, 960 (7th Cir. 2013). If the defendant fails to satisfy its burden, the plaintiff has established the "but-for" cause he needs to ultimately prevail on the claim. *Kidwell*, 679 F.3d at 965.

---

[1] In his Amended Complaint, Hill makes passing reference to an Eighth Amendment claim based on the reading of his legal mail. To the extent that he intended to plead such a theory, the Court rejects it and dismisses that claim *sua sponte* pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) for failure to state a claim. The Eighth Amendment prohibits the infliction of cruel and unusual punishment. The test for an Eighth Amendment violation due to conditions of confinement has two components, an objective and a subjective one. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the condition of confinement about which the inmate complains must be objectively serious; it must result in the denial of "'the minimal civilized measure of life's necessities'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, the official must have a sufficiently culpable state of mind, that is, he must at a minimum be deliberately indifferent. *Farmer*, 511 U.S. at 834. An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. As a matter of law, Best's reading of one piece of Hill's mail – even *bona fide* attorney-client mail – does not amount to the denial of "the minimal civilized measure of life's necessities" such that it would violate the Eighth Amendment. Wrongdoing of that sort is addressed through other avenues, as discussed above.

In the Amended Complaint,[2] Hill pleads that on or around June 14, 2009, Best learned Hill might be providing information to the aforementioned lawyer's office and told Hill to keep his mouth shut. On that same day, Hill filed a grievance about his "legal mail" being opened and read outside his presence and about Best's threats. Hill alleges in his amended complaint that in retaliation for these protected activities, Best retaliated against him by, among other things, denying him a shower for the week following August 12, 2009.

The evidence submitted on summary judgment, viewed in Hill's favor, demonstrates, as discussed above, that Best knew a law firm had asked Hill to provide information about another inmate's case. The evidence also shows Hill offered in a letter to provide information to the attorney's office in late July 2009, although no evidence suggests Best knew of this letter. Correctional Officers Purdom and/or Greenley refused to allow Hill his weekly shower for the first week of August 2009. Hill was again refused a shower in the third week of August, on October 30, 2009, and on November 6, 2009, although he was allowed to shower on August 12, 2009. There is no evidence showing Best was in any way connected with the shower deprivation in August, although there is evidence that Best directed that Hill not receive a shower on October 30, 2009.

No evidence supports a reasonable inference that Best was responsible for Hill's missing two showers in August. The evidence shows that decision was made by Correctional Officers Purdom and/or Greenley.

To the extent that Best was responsible for Hill's missing later showers, no evidence

---

[2] In his objection, Hill refers to allegations in his original complaint (Doc. 1). However, the original complaint is no longer the operative pleading in this case because an amended complaint was filed (Doc. 65). *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). Allegations in the original complaint are no longer relevant.

8

supports a reasonable inference that those deprivations were causally related to Hill's protected conduct that occurred months earlier. The third element of Hill's case – that his protected activity was a motivating factor in Best's actions – can be established by direct or circumstantial evidence, including suspicious timing. *Kidwell*, 679 F.3d at 966. Suspicious timing, by itself, is rarely sufficient to create a genuine issue of material fact. *Id.* Hill offers nothing other than the timing of the shower deprivation to tie it to his First Amendment activity in June 2009, the only protected activity Best knew about. However, the length of time between Hill's protected activities – about 4 or 5 months – and Best's shower deprivation is not sufficient for a reasonable jury to infer the activity was a motivating factor for the shower deprivation.

For these reasons, Best is entitled to summary judgment on Count 4 to the extent it is based on deprivation of showers.

IV. **Conclusion**

For the foregoing reasons, the Court:

- **ADOPTS** the Report in its entirety (Doc. 117) as **SUPPLEMENTED** by this Order;

- **GRANTS** Best's motion for partial summary judgment (Doc. 111);

- **DISMISSES with prejudice** Count 1 (interference with legal mail) in its entirety and Count 4 (retaliation) to the extent it is based on deprivation of showers;

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case; and

- **ORDERS** the parties to submit a proposed final pretrial order to Magistrate Judge Frazier's chambers on or before October 14, 2014.

**IT IS SO ORDERED.**
**DATED: September 11, 2014**

           s/J. Phil Gilbert
           **J. PHIL GILBERT**
           **DISTRICT JUDGE**